Edith Olszewski and John Skanderson, Appellants v. The Borough of Blawnox Council, Appellee.

Argued May 5, 1982, before Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*James R. Mall*, with him *James Victor Voss, Meyer, Unkovic & Scott*, for appellants.

*John F. Cambest, Conway, Meyer & Cambest*, for appellee.

OPINION BY JUDGE DOYLE, February 17, 1983:

This is an appeal from an order of the Court of Common Pleas of Allegheny County which dismissed the appeal of Edith Olszewski and John Skanderson (Appellants) of their removal from the Zoning Hearing Board of the Borough of Blawnox (Board) pursuant to Section 905 of the Pennsylvania Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10905. For the reasons which follow, we reverse the order of the court of common pleas.

The relevant facts are not in dispute. The Appellants were duly appointed members of the Board. On July 2, 1980, an informal meeting was held concerning the possible need for certain variances for the proposed construction of a federally funded high-rise apartment building for low-income, handicapped and elderly citizens in the Borough of Blawnox.[1] Following this meeting, the developer, Crossgates, Inc., (Crossgates) formally requested that a hearing before the Board be scheduled in order to obtain variances from certain height and parking requirements.[2] On July 21, 1980, before a variance hearing was held, the Borough Council (Council) passed a resolution which directed the building inspector to immediately issue a building permit for the proposed apartment building. Upon discovery of the Council's action, the Board, rather than consulting the borough solicitor, approved the retaining of an attorney to provide an opinion on the need for variances to construct the apartment building. Subsequently, Appellants, acting as both the Board and in their individual capacities, filed an appeal with the court of common pleas seeking to set aside the building permit. This appeal was dismissed for lack of standing. By letter dated December 23, 1980, the Council informed Appellants of its intention to remove them from membership on the Board. The reasons cited for this action included the Appellants' appeal of the issuance of the building permit and the retaining of a private attorney without the approval of the Council. Following a hearing before the Council, Appellants were removed from the Board by resolution of that body.

Appellants appealed their removal from the Board to the court of common pleas. Following a hearing, the

---

[1] At this meeting the Board, Borough Council and the developer were represented.

[2] This request by Crossgates for a hearing was never withdrawn.

trial court concluded that although Appellants' conduct was not malfeasant, misfeasant or nonfeasant, the evidence did support a finding of good cause for removal from office. Since a full and complete record of the proceeding before the Council was not available, the court below heard the appeal de novo, pursuant to Section 754(a) of the Local Agency Law, 2 Pa. C. S. §754(a). Thus, our scope of review is limited to determining whether the Appellants' constitutional rights have been violated, and whether the trial court manifestly abused its discretion or committed an error of law. *See Goetz v. Borough of Zelienople,* 14 Pa. Commonwealth Ct. 639, 324 A.2d 808 (1974).

The charges against Appellants essentially alleged malfeasance and misfeasance in office. Malfeasance in office "is not merely error in judgment or departure from sound discretion, but the act, omission or neglect must be wilful, corrupt and amount to a breach of duty legally required by one who has accepted public office." *Commonwealth v. McSorley,* 189 Pa. Superior Ct. 223, 227-228, 150 A.2d 570, 572 (1959). Misfeasance has been construed to mean "either the breach of a positive statutory duty or the performance by a public official of a discretionary act with a corrupt motive." *Id.* at 227, 150 A.2d at 572. While Appellants' appeal of the issuance of the building permit may have been misguided, it certainly did not constitute malfeasant conduct. Similarly, Appellants' actions to secure independent legal advice for the Board is not misfeasant.[3] In fact, under certain circumstances, due process will preclude the borough solicitor from serving as solicitor for the Board. *See Horn v. Township of*

---

[3] The opinion by the trial court criticizes Appellants' insistence on "the expenditure of public funds to obtain a legal opinion." Our search of the record, however, reveals no evidence that the Borough was either billed or paid for the independent legal advice which the Board received.

*Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975). The trial court determined that the Appellants "acted from a deep conviction of public service and in the belief that they were fighting to correct a grievous wrong," and also that they "acted from a personal sense of civic duty and from no evil motive." We conclude that the trial court's finding that Appellants' conduct did not constitute malfeasance, misfeasance or nonfeasance is supported by substantial evidence. We disagree, however, with the court's conclusion that the evidence did support a finding of good cause for removal from office.

The removal of members of a zoning hearing board is controlled by Section 905 of the Code which provides in pertinent part: "Any Board member may be removed for malfeasance, misfeasance or nonfeasance in office or for other just cause." Removal pursuant to this statute, which has never before been construed, presents a case of first impression. Initially, we note that the statute provides for removal based upon two separate, independent standards. A board member may be removed (1) as a result of certain prescribed misconduct in office, or (2) due to *other* just cause. We are of the opinion that the distinction between these two standards lies not so much in the degree of misconduct, but rather in the locus or type of misconduct. In other words, if the alleged misconduct pertains to the performance of a member's duties, the first standard would ordinarily be invoked. If, however, the alleged misconduct pertains to activity outside the scope of the zoning hearing board, removal would be based on a finding of just cause.

Section 905 of the Code does not define the term "just cause." It is reasonable that the legislature intended "just cause" to be that quantum or degree of misconduct which is consistent with, and parallel to, the degree of wrongdoing set forth in the first stan-

dard. For guidance in the application of "just cause," we refer to Section 807 of the Civil Service Act,[4] which provides that civil service employees cannot be removed except for "just cause." Borrowing from the case law which has been developed to define "just cause" in the civil service context, we find two fundamental principles which must apply to the second standard set forth in Section 905. First, "[n]either political, religious, or racial reasons, nor [lawful] labor union activity ... can afford a basis for dismissal" and second, "just cause" must be "personal to the employee and such as to render him unfit for the position he occupies." *Richter v. Civil Service Commission*, 35 Pa. Commonwealth Ct. 310, 313-314, 387 A.2d 131, 133 (1978) (quoting *O'Gorman Appeal*, 409 Pa. 571, 576-577, 187 A.2d 581, 583-584 (1963)). In brief, the conduct must relate to the individuals' competency and ability in a rational and logical manner and solely concern itself with the inefficiency, delinquency or misconduct of the dismissed individual. "Just cause" under the Civil Service Act incorporates both standards set forth in Section 905 of the Code. Consequently, a selection of case law concerning Section 807 of the Civil Service Act will illustrate the types of misconduct contemplated by the "just cause" standard set forth in Section 905. For example, removal for just cause may be based upon alleged criminal activity,[5] moral turpitude,[6] and the peddling of influence of office,[7] or gross negligence,[8] unsatisfactory work per-

---

[4] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.807.

[5] *Pennsylvania Department of Justice, Bureau of Corrections v. Grant*, 22 Pa. Commonwealth Ct. 582, 350 A.2d 878 (1976).

[6] *Richter; Faust v. Police Civil Service Commission of State College*, 22 Pa. Commonwealth Ct. 123, 347 A.2d 765 (1975).

[7] *O'Gorman.*

[8] *Williams v. State Civil Service Commission*, 9 Pa. Commonwealth Ct. 437, 306 A.2d 419 (1973), *aff'd* 457 Pa. 470, 327 A.2d 70 (1974).

formance,[9] and failure to properly execute assigned duties.[10] While these examples do not exhaust the possible grounds for removal based on "just cause", they do identify the type of misconduct or inexcusable conduct to which the second standard of Section 905 refers.

The removal of Appellants was due to alleged misconduct in office. As we explained above, the record supports the trial court's conclusion that Appellants' conduct did not constitute misfeasance, malfeasance or nonfeasance. Furthermore, following our careful review of the record, we conclude that Appellants' conduct does not provide a basis for removal for just cause. Thus, we reverse the order of the court of common pleas and direct the reinstatement of the dismissed zoning hearing board members.

ORDER

Now, February 17, 1983, the order of the Court of Common Pleas of Allegheny County in the above referenced matter, dated May 22, 1981 is hereby reversed. Furthermore, the Borough of Blawnox Council is directed to reinstate Edith Olszewski and John Skanderson to membership on the Zoning Hearing Board of the Borough of Blawnox.

---

[9] *Omelchenko v. Housing Authority of the County of Lebanon,* 58 Pa. Commonwealth Ct. 494, 428 A.2d 274 (1981).

[10] *DeMarinis v. Hazleton Housing Authority,* 42 Pa. Commonwealth Ct. 60, 399 A.2d 1197 (1979).